# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| MARK TERMINI ASSOCIATES INC<br>8803 Brecksville Road, #7271<br>Brecksville, Ohio 44141<br><br>And<br><br>MARK TERMINI<br>c/o Mark Termini Associates Inc<br>8803 Brecksville Road, #7271<br>Brecksville, Ohio 44141<br><br>                Plaintiff,<br><br>    vs.<br><br>KLUTCH SPORTS GROUP, LLC<br>c/o Corporation Service Company<br>50 West Broad Street<br>Suite 1330<br>Columbus, Ohio 43215<br><br>And<br><br>RICH PAUL<br>c/o Klutch Sports Group<br>9336 Civic Center Drive<br>Beverly Hills, California<br>90210<br><br>                Defendants. | CASE NO.:<br><br>JUDGE:<br><br><br>COMPLAINT<br>(Jury Demand Endorsed Hereon) |

Now comes Plaintiffs, Mark Termini Associates Inc and Mark Termini ("Plaintiffs" or "MTA" or "Termini"), and for their complaint against Defendants Klutch Sports Group, LLC and Rich Paul ("Defendants" or "KSG" or "Paul") state as follows:

1

**THE PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Mark Termini Associates Inc ("MTA") is a corporation organized under the laws of the state of Ohio. MTA has its principal place of business in the city of Brecksville, county of Cuyahoga and state of Ohio. At all times relevant herein, MTA was in the business of sports management and sports marketing focused principally on the representation of professional basketball players.

2. Plaintiff, Mark Termini ("Termini") is a citizen of the state of Ohio, residing in the county of Cuyahoga. He is a sports attorney and the founder and owner of MTA, having founded the company in 1986. At all times relevant herein, Termini has been engaged in the business of sports management and marketing through his company MTA. Over his 38-year career, he has produced a track record of contract negotiation achievements that have established him as one of the most accomplished and respected player agents in professional sports.

3. Defendant, Klutch Sports Group, LLC ("KSG") is a limited liability company organized under the laws of the state of Delaware. During the majority of the time relevant herein, KSG had its principal place of business in the city of Cleveland, the county of Cuyahoga and the state of Ohio. Since it was founded in 2012, KSG has operated as a sports management and marketing company focused initially on the representation of professional basketball players. In or around 2019, KSG sold its majority interest to United Talent Agency ("UTA"), a Hollywood entertainment agency, and relocated its headquarters to Beverly Hills, California. KSG then expanded into the representation of athletes in other sports, including football and baseball.

4. Defendant, Rich Paul ("Paul") is an individual who at most of the relevant times herein was a resident of the county of Cuyahoga and the state of Ohio. Paul founded KSG for the purpose of providing sports management and marketing services to professional athletes,

principally professional basketball players. Paul regularly conducts business in, and frequently travels to, the state of Ohio and Cuyahoga County.

5. This Court has jurisdiction over Plaintiffs' claims in this case pursuant to 28 U.S.C. §1332 as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391, as well as Rule 3.8 of the Local Rules of the Northern District of Ohio, given that the March 17, 2014 Agent Services Fee Agreement between Mark Termini Associates Inc and Klutch Sports Group LLC and the March 18, 2016 First Amendment to Agent Services Fee Agreement between Mark Termini Associates Inc and Klutch Sports Group, LLC (hereinafter the "Agreement") were entered into and substantially performed by the parties in the county of Cuyahoga and the state of Ohio where each party had their residence and principal place of business; the breach of the Agreement by Defendants has resulted in significant damage to Plaintiffs in the state of Ohio; and all or a substantial part of the events and activity giving rise to Plaintiffs' claims for relief occurred within this judicial district.

## STATEMENT OF FACTS

7. Termini initially established his reputation as a sports attorney and agent through the representation of professional athletes who had their basketball roots in Ohio.

8. Termini graduated from Case Western Reserve University in 1978 where he was a Hall of Fame basketball player. After receiving his Juris Doctor cum laude from Cleveland State Cleveland-Marshall College of Law in 1984 and being admitted to the Ohio bar that same year, Termini founded MTA as a sports agency in 1986 to near-exclusively represent professional basketball players.

9. During his career prior to his engagement by KSG, he orchestrated a number of significant National Basketball Association ("NBA") player contract signings, including contracts resulting from holdouts for his clients Ron Harper (1986), Kenny Battle (1989), Rod Strickland (1989), Jim Jackson (1992), Dave Jamerson (1994), Gaylon Nickerson (1994), and Damon Jones (2005).

10. Over the course of Termini's career he has negotiated approximately $2 billion in professional sports contracts, including player, coach, and executive contracts in the NBA and in international professional basketball leagues. Termini routinely shaped how the NBA does business through the impact of his contract negotiation strategies and player empowerment results.

11. In 2012, Termini was contacted by Paul and asked to run the contract negotiations for KSG, which Paul had only just recently founded after departing Creative Artists Agency with four clients.

12. At that time, Termini was extremely experienced, accomplished, and well-known throughout the NBA, having already negotiated over $400 million in contracts for a variety of his clients. When he approached Termini in 2012, Paul had not previously negotiated a player contract as a player agent.

13. Termini agreed to assist KSG and Paul on December 2, 2012. When that initial working relationship was formulated, Paul was very significantly reliant upon Termini's reputation, experience, business skills, and contract negotiation acumen to solidify Paul's fledgling agency and build out KSG's business.

14. The parties memorialized the business arrangement under which they had been operating in a written Agent Services Fee Agreement executed March 17th, 2014, with an effective date of December 2, 2012. [A True and Accurate Copy of the Agreement is attached as Exhibit A]

15. At all times, Termini was an independent contractor and never an employee of KSG.

16. Under the terms of the Agreement, MTA and Termini agreed to "provide contract negotiation, business advisory and other administrative and support services (the Agent Services) to [KSG and Paul]."

17. In exchange for providing the Agent Services, KSG and Paul agreed to pay the Agent Services Fees to MTA and Termini in the amount of Twenty-Five Percent (25%) of KSG and Paul's gross fee on any NBA Contract and on any marketing Contract for all Clients of KSG and Paul.

18. Pursuant to Paragraph 6 of the Agreement, the Total Agent Services Fee due to MTA and Termini is "earned … **upon the signing by the Client of the underlying playing or endorsement contract**" (emphasis added).

19. Pursuant to Paragraph 6 of the Agreement, the "earned" Agent Services Fee owed to MTA and Termini is not affected or reduced in any way due to the termination or expiration of the representation agreement between the Client and KSG or Paul.

20. Further, pursuant to Paragraph 6 of the Agreement, the "earned" Agent Services Fee is owed to MTA and Termini even if the Agreement expires or is terminated.

21. The Agent Services Fee is calculated as a percentage of the Total Value of the Client Contract ("TVCC") which is the "combined aggregate total value for and of all years of such Contract, including the total of all salary, bonuses, and any other elements of value payable to the Client from the Team, employer, or entity for which the Client plays or provides services." [Agreement at ¶ 5]

22. Pursuant to Paragraph 10 of the Agreement, KSG and Paul agreed that MTA and Termini would "be the **exclusive provider** to KSG of the Services described herein during the Term of this Agreement" (emphasis added).

23. The Agent Services to be exclusively provided by MTA and Termini included "contract negotiation" services pursuant to the Agreement.

24. The original Term of the Agreement was three (3) years and would have expired on December 2, 2015.

25. In 2016, due to the extraordinary, highly successful, and widely recognized contract negotiation performance by MTA and Termini on behalf of KSG and Paul, the parties agreed in writing to extend the Term of the Agreement. The First Amendment to Agent Services Fee Agreement between Mark Termini Associates Inc and Klutch Sports Group, LLC was executed on March 18, 2016 ("Amendment"). [A true and accurate copy of the Amendment is attached as Exhibit B]

26. The Amendment extended the Term of the Agreement for an additional period of five (5) years beginning on December 2, 2015 and expiring on December 2, 2020.

27. Paragraph 2 of the Amendment further delineated and specified the terms of Paragraph 6 of the Agreement to state that the "[t]he Total Agent Services Fee due to [MTA and Termini] is due and payable by [KSG and Paul] to MTA/MT immediately and in full upon the signing by the Client of the underlying playing or endorsement contract, and the waiver or deferral of the Fee due from the Client to [KSG and Paul] shall not affect, reduce, waive or defer the Agent Services Fee amount due from [KSG and Paul] to [MTA and Termini];…"

28. During the Term of the Agreement (hereinafter, all references to the "Agreement" shall include the "Amendment" unless otherwise specified) and through the NBA offseason and

draft / free agency period preceding the 2019-2020 season, MTA and Termini negotiated in excess of $1.4 billion in contracts for Clients of KSG and Paul, massively enriching KSG and Paul in the process.

29. MTA and Termini's Agent Services included designing, implementing, and conducting prolonged contract negotiation strategies for veterans Eric Bledsoe with the Phoenix Suns (2014), Tristan Thompson with the Cleveland Cavaliers (2015), and J.R. Smith with the Cleveland Cavaliers (2016), as well as rookie signings for Trey Lyles with the Utah Jazz (2015), Montrezl Harrell with the Houston Rockets (2015), Dejounte Murray with the San Antonio Spurs (2016), and Terrance Ferguson with the Oklahoma City Thunder (2017).

30. MTA and Termini developed and implemented the unprecedented design and contract negotiation strategy upon which LeBron James returned to Cleveland as a free agent in 2014 pursuant to the negotiation by MTA and Termini and subsequent execution of a two-year maximum contract with the Cleveland Cavaliers by James.

31. MTA and Termini's "one plus one" strategy, hailed by The New York Times as "unprecedented" and by Business Insider as "a genius move," resulted in James receiving $19 million more over the course of his three Cavaliers contracts than he otherwise would have earned had he signed a four-year maximum deal in 2014. Essentially, due to MTA and Termini's strategy and contract construction, James received an extra $19 million for signing his name three times instead of once.

32. MTA and Termini also negotiated a number of significant marketing contracts for various Clients of KSG between 2014 and 2019, including the Ben Simmons Nike deal in 2016, which hugely exceeded previous No. 1 overall NBA Draft selections in base salary and bonus compensation for Simmons.

7

33. MTA and Termini also negotiated NBA employment agreement contracts for non-playing KSG Clients including trainers, security personnel, and administrators that very significantly exceeded the salary, bonus, and perquisite compensation packages for similar positions in the NBA.

34. Termini was the contract negotiator for the landmark deals on behalf of KSG Clients including but not limited to Eric Bledsoe (five years, $70,000,000 fully guaranteed with the Phoenix Suns in 2014), Tristan Thompson (five years, $82,000,000 fully guaranteed with the Cleveland Cavaliers in 2015), LeBron James (four years, $153,000,000 fully guaranteed with the Los Angeles Lakers in 2018), Ben Simmons (five years, $168,000,000 fully guaranteed with the Philadelphia 76ers in 2019), Draymond Green (four years, $100,000,000 fully guaranteed with the Golden State Warriors in 2019), and Dejounte Murray (four years, $64,000,000 fully guaranteed with the San Antonio Spurs in 2019).

35. From 2014 to 2019, Termini designed and implemented the strategy for all KSG player contract negotiations.

36. Termini decided the structure and amount of all contract proposals, when to reject an offer, and when to impose a holdout.

37. Termini conducted all details of the contractual monetary discussions with the NBA teams and instructed KSG and Paul in every aspect of the execution of the negotiations, including when to release information to the media, what to explain to Clients regarding negotiation strategies, and when to engage or not engage with a Team.

38. Termini controlled all aspects of the decision-making process and the substantive information that was exchanged with the Teams.

39. Termini decided when to finalize the deals and when Paul should advise Clients to sign the contracts, at which time Termini would set up a verbal handshake call between the Team, the player, Termini, and Paul.

40. Following the verbal handshake between the Team representative, Paul, Termini, and the Client, MTA and Termini would then negotiate to finalize all of the language written in the Uniform Player Contract ("UPC") involving salary protection, payment schedule, love of the game clause, and all of the other negotiable contract language that comprised the final UPC between the player (the KSG Client) and the NBA Team.

41. Despite Termini being the lead (and substantively the only) negotiator at all points of the player contract negotiation process, KSG and Paul individually and collectively took public credit in the media for the contracts negotiated by Termini in order to enhance Paul's industry reputation and the value of the KSG agency.

42. In or about 2018, with the credibility of KSG and Paul now established in the marketplace as a direct result of MTA and Termini's contract negotiation achievements, KSG and Paul expressed a desire to pay MTA and Termini significantly less than the amounts required under the written terms of the Agreement. However, rather than attempt to renegotiate the written Agreement with MTA and Termini, KSG and Paul began to unilaterally and improperly submit payments to MTA and Termini at such lesser amounts.

43. MTA and Termini refused to accept the reduced rates offered by KSG and Paul, which were tendered in violation of the Agreement, and for a time, KSG and Paul reinstated payments to MTA and Termini at the full rates required under the Agreement. Eventually, however, KSG and Paul refused to pay MTA and Termini the full amounts required according to the terms of the Agreement on a number of contracts negotiated by MTA and Termini. KSG and

Paul's refusal to pay the Agent Services Fees due to MTA and Termini under the Agreement is a direct material breach of the Agreement.

44. During the Term, KSG and Paul began to take various steps to circumvent MTA and Termini's exclusive role in connection with KSG and Paul's business and deny MTA and Termini their proper compensation under the express terms of the Agreement. Specifically, upon information and belief, KSG and Paul committed the following improper acts:

   a. KSG and Paul hired third party agents to provide Agent Services in violation of the exclusivity provision found in Paragraph 10 of the Agreement, then refused to pay the Agent Services Fees in connection with such Services;

   b. KSG and Paul concealed the existence of Contracts from MTA and Termini in order to avoid the payment of the Agent Services Fees otherwise required under the Agreement;

   c. KSG and Paul refused to pay the Agent Services Fees in connection with Contracts that were negotiated during the Term of the Agreement but signed upon the expiration of the Agreement, and KSG and Paul refused to pay the Agent Services Fees in connection with Contracts on which negotiations were deliberately delayed until after the expiration of the Agreement solely for the purpose of avoiding the obligation to pay MTA and Termini the Agent Services Fees in connection with such Contracts;

   d. KSG and Paul refused to properly calculate and pay the Agent Services Fees owed to MTA and Termini based on the TVCC and any extensions or renewals thereof; and

    e. KSG and Paul refused to properly reimburse MTA and Termini for Expenses rightfully incurred and invoiced to KSG under the terms of the Agreement.

45. Upon information and belief, KSG and Paul negotiated and withheld disclosure of various Client marketing Contracts in violation of the terms of the Agreement.

46. MTA and Termini have demanded an accounting of the marketing Contracts which KSG and Paul negotiated without informing MTA and Termini.

47. KSG and Paul have refused to provide an accounting as demanded.

48. KSG and Paul have refused to honor the exclusivity provision in violation of the Agreement.

49. Following KSG and Paul's refusal to honor the exclusivity provision of the Agreement through the expiration of the Agreement on December 2, 2020, MTA and Termini demanded that KSG and Paul pay the full amount of the Agent Services Fees due to MTA as required under the terms of the Agreement.

50. KSG and Paul have refused to pay the Agent Services Fees as agreed upon in the Agreement.

51. KSG and Paul have repeatedly, knowingly, and deliberately rejected all demands from MTA and Termini to honor the Agreement, including adherence to its exclusivity and Agent Services Fee payment provisions required thereunder, and to provide an accounting of all Contracts relevant to the performance of the Agreement.

52. KSG and Paul have failed to:

    a. Pay MTA and Termini the Total Agent Services Fees required under the terms of the Agreement for a number of player Contracts negotiated by MTA and Termini;

11

b. Pay MTA and Termini the Agent Services Fees for marketing Contracts negotiated by KSG in breach of MTA and Termini's exclusive rights;

c. Pay MTA and Termini the Agent Services Fees for player Contracts negotiated by KSG in breach of MTA and Termini's exclusive rights;

d. Pay MTA and Termini the Total Agent Services Fee immediately and in full upon the signing by the Client of the underlying playing or endorsement contract;

e. Pay MTA and Termini the Agent Services Fees for non-player Contracts negotiated by MTA and Termini during the Term of the Agreement and all renewals of those Contracts;

f. Pay MTA and Termini the Total Agent Services Fees for Contracts negotiated by MTA and Termini but revised by KSG and Paul during the Term;

g. Pay MTA and Termini the Agent Services Fees for Contracts not disclosed to MTA and Termini during the Term;

h. Pay MTA and Termini the Agent Services Fees for Contracts executed after the Term but negotiated during the Term in violation of MTA and Termini's exclusive rights as well as in a breach of good faith;

i. Pay MTA and Termini the Agent Services Fees for Contracts negotiated by Paul and / or other agents of KSG in breach of the exclusivity provisions of the Agreement;

j. Pay MTA and Termini for Expenses incurred and invoiced under the terms of the Agreement;

k. Pay MTA and Termini interest on the unpaid Fees and Expense Amounts.

## COUNT ONE
### (Breach of Contract)

53. The foregoing allegations are incorporated by reference as if fully rewritten herein.

54. MTA and Termini agreed to provide services to KSG and Paul including contract negotiation, business advisory and other administrative and support services under the terms of a written Agreement and subsequent written Amendment.

55. In consideration for providing these Services, KSG and Paul agreed to pay MTA and Termini 25% of the Contract fee payable to KSG and Paul by the Client.

56. Pursuant to Paragraph 10 of the Agreement, MTA and Termini "shall be **the exclusive provider** to KSG of the Services described herein during the Term of this Agreement" (emphasis added).

57. Pursuant to the exclusivity provision, MTA and Termini had the right to negotiate every playing Contract and every marketing Contract on behalf of any and all Clients of KSG and Paul during the Term.

58. Under the terms of the Agreement, the Total Agent Services Fee was earned by MTA and Termini at the time the Client signed a playing or endorsement contract.

59. Further, the Agent Services Fee was based upon the combined aggregate total value for and of all years of the contract and was due and payable immediately and in full **upon the signing by the Client of the underlying playing or endorsement contract**.

60. For example, if MTA and Termini negotiate a four-year, $100 million contract on behalf of a Client of KSG, then MTA and Termini are entitled to 25% of the full $4,000,000 KSG fee. The Agent Services Fee due to MTA and Termini would equal $1,000,000 and be due and payable to MTA and Termini **upon the signing by the Client of the underlying contract**.

61. MTA and Termini have fully performed all obligations under the Agreement and satisfied all condition precedents to the payment of the Total Agent Services Fees.

62. KSG and Paul have not paid MTA and Termini the Total Agent Services Fees owed to MTA and Termini under the Terms of the Agreement for player Contracts with professional Teams and for marketing Contracts with various entities.

63. MTA and Termini have demanded that KSG and Paul satisfy their contractual obligations and pay the Total Agent Services Fees owed to MTA and Termini for all Contracts negotiated on behalf of KSG Clients.

64. MTA and Termini have made repeated demands upon KSG and Paul to honor the terms of the Agreement and to pay the balance owed to MTA and Termini.

65. KSG and Paul have refused, both expressly and through their silence, to pay the Agent Services Fees owed to MTA and Termini on player, non-player personnel, and marketing Contracts negotiated by MTA and Termini.

66. Upon information and belief, during the Term of the Agreement, KSG negotiated marketing Contracts on behalf of clients without disclosing the agreements to MTA and Termini in violation of MTA and Termini's right of exclusivity.

67. Additionally, on October 17, 2020 and prior to the expiration of the Term of the Agreement, Paul advised MTA and Termini that Paul would be "the only one speaking to teams on behalf of all KSG clients including 2020 Rookie [sic]" and taking the "lead" on the contract negotiations for the upcoming 2020 NBA draft and free agency signing period which, due to Covid-19, were postponed and did not begin until November 2020.

68. Thereafter, KSG and Paul and new agents acquired by KSG, Paul, and UTA engaged in contract negotiations in violation of MTA and Termini's exclusivity and Clients of

14

KSG executed Contracts negotiated by KSG and Paul in violation of MTA and Termini's exclusive right to provide the contract negotiation Services pursuant to the Agreement.

69. The original Term of the Agreement as amended was intended by both MTA and Termini and KSG and Paul to provide that MTA and Termini would negotiate all KSG Contracts through the conclusion of the 2020 NBA Free Agency negotiating period. However, due to the Covid-19 pandemic and the subsequent unforeseeable delay in completing the 2019-2020 NBA season, the NBA calendar was revised and the Free Agency period, which was originally scheduled for July 2020, was delayed until November 2020.

70. KSG and Paul took opportunistic advantage of this unforeseeable delay, and in a breach of the covenant of good faith and fair dealing, purposely and knowingly and solely with the goal of avoiding paying MTA and Termini the Agent Services Fees that MTA and Termini would have earned for Contracts negotiated during that period, intentionally, and for no other reason, delayed the signing of two major NBA Client Contracts until the day after the expiration of the Agreement with MTA and Termini. Those two Contracts were signed on December 3, 2020.

71. Although those Contracts were physically signed on December 3, 2020, they were negotiated during the Term of MTA and Termini's exclusivity period. In the alternative, negotiations were intentionally delayed by KSG and Paul until after the Term of the Agreement. Under either scenario, KSG and Paul purposely delayed the signing of the Contracts by the Clients until December 3, 2020 in order to attempt to avoid paying MTA and Termini the Agent Services Fees due on such Contracts.

72. KSG and Paul are in breach of the Agreement by virtue of their failure to:

   a. Pay MTA and Termini the Total Agent Services Fees required under the Terms of the Agreement for a number of player Contracts negotiated by MTA and Termini;

15

b. Pay MTA and Termini the Agent Services Fees for marketing Contracts negotiated by KSG in breach of MTA and Termini's exclusive rights;

c. Pay MTA and Termini the Agent Services Fees for player Contracts negotiated by KSG in breach of MTA and Termini's exclusive rights;

d. Pay MTA and Termini the Total Agent Services Fee immediately and in full upon the signing by the Client of the underlying playing or endorsement contract;

e. Pay MTA and Termini the Agent Services Fees for non-player Contracts negotiated by MTA and Termini during the Term of the Agreement and all renewals of those Contracts;

f. Pay MTA and Termini the Total Agent Services Fees for Contracts negotiated by MTA and Termini but revised by KSG and Paul during the Term;

g. Pay MTA and Termini the Agent Services Fees for Contracts not disclosed to MTA and Termini during the Term;

h. Pay MTA and Termini the Agent Services Fees for Contracts executed after the Term but negotiated during the Term in violation of MTA and Termini's exclusive rights as well as in a breach of good faith;

i. Pay MTA and Termini the Agent Services Fees for Contracts negotiated by Paul or other agents of KSG in breach of the exclusivity provisions of the Agreement;

j. Pay MTA and Termini for Expenses incurred and invoiced under the terms of the Agreement;

k. Pay MTA and Termini interest on the unpaid Fees and Expense Amounts.

73. MTA and Termini have been damaged in an amount in excess of Four Million Nine Hundred Thousand Dollars ($4,900,000) plus interest because of KSG and Paul's breach of the Agreement, the exact amount to be determined at trial.

## COUNT TWO
### (Accounting)

74. The foregoing allegations are incorporated by reference as if fully rewritten herein.

75. Pursuant to Paragraph 10 of the Agreement, MTA and Termini had the right to negotiate every playing Contract and every marketing Contract on behalf of any and all Clients of KSG during the Term.

76. Upon information and belief, during the Term of the Agreement, KSG and Paul negotiated marketing Contracts on behalf of Clients but failed to disclose the details of the marketing Contracts and the fees earned by KSG and Paul incident to negotiations of these Contracts.

77. Additionally, during the Term, KSG and Paul engaged in player contract negotiations in violation of MTA and Termini's exclusivity and Clients of KSG executed Contracts negotiated in violation of MTA and Termini's exclusivity.

78. KSG and Paul engaged in non-player contract negotiations in violation of MTA and Termini's exclusivity and Clients of KSG executed Contracts negotiated in violation of MTA and Termini's exclusivity.

79. MTA and Termini have repeatedly demanded an accounting of the Contracts negotiated in violation of the exclusive rights of MTA and Termini.

80. KSG and Paul have refused to provide MTA and Termini with any such accounting.

81. MTA and Termini are entitled to an accounting of all player Contracts, non-player Contracts and marketing Contracts negotiated by KSG and Paul in violation of MTA and Termini's right of exclusivity under the terms of Paragraph 10 of the Agreement.

**WHEREFORE,** Plaintiffs pray this Court grant the following relief:

A. Damages in excess of $4,900,000 plus interest for KSG and Paul's breach of the Agreement;

B. Order an Accounting of all player Contracts, non-player Contracts and marketing Contracts negotiated by KSG, Paul, and their agents and representatives;

C. Statutory interest from the date the Agent Services Fees were earned and from the date that Expenses were incurred and accrued, due and owing; and

D. All other relief at law or equity which the Court deems appropriate, including but not limited to attorneys' fees.

Respectfully Submitted,

*/s/Richard C. Haber*
Richard C. Haber (0046788)
HABER LLP
30195 Chagrin Boulevard, Suite 323
Pepper Pike, OH 44124
Office: (216) 250-4782
Fax: (216) 250-4783
Email: rhaber@haberllp.com

*/s/Alexis E. Anderson*
Alexis E. Anderson (0102658)
Mark Termini Associates Inc
8803 Brecksville Rd. #7271
Brecksville, OH 44141
Office: (440) 717-1517
Email: aanderson@Terminisports.com

*Attorneys for Plaintiffs*

## **JURY DEMAND**

A trial by jury is hereby demanded on all claims permitted by law.

                                                               */s/Richard C. Haber*
                                                               Richard C. Haber (0046788)