UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| Mark Termini Associates Inc., et al., | ) | CASE NO. 1:24 CV 1068 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Klutch Sports Group, LLC, et al., | ) | |
| | ) | Memorandum of Opinion and Order |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendants' Motion To Compel Arbitration or, in the Alternative, Dismiss the Complaint in Part Pursuant to Rule 12(b)(6) (Doc. 13). This is a breach of contract case. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

**FACTS**

Plaintiffs Mark Termini ("Termini") and Mark Termini Associates Inc. ("MTA") (collectively, "Plaintiffs") bring this lawsuit against defendants Klutch Sports Group, LLC ("KSG") and Rich Paul ("Paul") (collectively, "Defendants"). For purposes of ruling on the pending motion, all well-pleaded factual allegations in the Complaint (Doc. 1) are presumed true.

Termini founded MTA in 1986. Termini and MTA are in the business of sports management and sports marketing focused principally on the representation of professional basketball players.

Paul founded KSG in 2012 and, like MTA, it operates as a sports management and marketing company focused initially on the representation of professional basketball players.[1]

Both Termini and Paul are "Player Agents" certified by the National Basketball Players Association ("NBPA"), which is the exclusive collective bargaining agent for current and prospective players in the National Basketball Association ("NBA"). Pursuant to a collective bargaining agreement, only Player Agents certified by the NBPA may negotiate player contracts on behalf of players. Certified Player Agents, such as Termini and Paul, agree to be bound by the NBPA's Regulations Governing Player Agents (the "NBPA Regulations"), which detail various professional and ethical standards and requirements that agents must meet.

Shortly after founding KSG in 2012, Paul asked Termini to run the contract negotiations for KSG. On December 2, 2012, Termini agreed to assist KSG and Paul. The parties later memorialized the business arrangement in a written agreement (the "Agreement") executed on March 17, 2014, with an effective date of December 2, 2012. The original term of the Agreement was three (3) years. On March 18, 2016, the parties agreed upon and executed an amendment (the "Amendment"), which extended the term of the Agreement for an additional period of five (5) years beginning on December 2, 2015, and expiring on December 2, 2020.

Under the terms of the Agreement, MTA and Termini agreed to "provide contract negotiation, business advisory and other administrative and support services (the Agent Services) to [KSG and Paul]." (Doc. 1 ¶ 16 (quoting Doc. 1-1, at 1).) In exchange for providing the Agent Services, KSG

---

[1] In or around 2019, KSG sold its majority interest, relocated its headquarters to Beverly Hills, California, and expanded into the representation of athletes in other sports, including football and baseball.

and Paul agreed to pay MTA and Termini twenty-five percent (25%) of KSG and Paul's gross fee on any NBA contract and on any marketing contract for all clients of KSG and Paul (the "Agent Services Fees").

Pursuant to the Agreement, the Agent Services Fees due to Plaintiffs were "earned . . . upon the signing by [a client] of the underlying playing or endorsement contract." The earned Agent Services Fees due to Plaintiffs were not "affected or reduced in any way due to the termination or expiration of the representation agreement between a client and Defendants" and were owed to Plaintiffs "even if the Agreement expires or is terminated." Further, pursuant to the Agreement, Defendants agreed that Plaintiffs would "be the exclusive provider" to KSG of the Agent Services during the term of the Agreement. The Agent Services to be exclusively provided by MTA and Termini included "contract negotiation" services.

Plaintiffs allege that despite Termini being the lead (and substantively the only) negotiator at all points of the player contract negotiation process, Defendants took public credit in the media for the contracts negotiated by Termini in order to enhance Paul's industry reputation and the value of KSG. According to Plaintiffs, in or about 2018, Defendants expressed a desire to pay Plaintiffs significantly less than the amounts required under the Agreement and began unilaterally submitting payments to Plaintiffs at such lesser amounts. Plaintiffs refused to accept the reduced rates offered by Defendants. For a time, Defendants returned to remitting payments to Plaintiffs at the full rates required under the Agreement. Eventually, however, Defendants refused to pay Plaintiffs the full amounts owed under the Agreement for a number of contracts allegedly negotiated by Plaintiffs.

Plaintiffs also allege that during the term of the Agreement, Defendants took various steps to circumvent Plaintiffs' exclusive role in connection with Defendants' business and deny Plaintiffs

their proper compensation under the Agreement, including hiring third parties to provide the Agent Services and concealing or deliberately delaying the execution or existence of contracts to avoid paying Plaintiffs the Agent Services Fees.

On June 25, 2024, Plaintiffs filed a two-count complaint against Defendants alleging breach of contract (Count One) and accounting (Count Two). Defendants now move to compel arbitration or, in the alternative, dismiss Plaintiffs' complaint in part for failure to state a claim. (Doc. 13.) Plaintiffs oppose Defendants' motion (Doc. 16) and Plaintiffs have filed a reply (Doc. 17).[2]

**DISCUSSON**

In the motion presently before the Court, Defendants contend that Plaintiffs' claims must be arbitrated pursuant to the NBPA Regulations. Alternatively, Defendants contend that Plaintiffs' breach of contract claim should be dismissed in part and Plaintiffs' accounting claim should be dismissed entirely. The Court will address each in turn.

### A. Defendants' Motion to Compel Arbitration

Under the Federal Arbitration Act ("FAA"), a written agreement requiring controversies between the contracting parties to be settled by arbitration is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party to an arbitration agreement may petition a district court with jurisdiction over the dispute for an order directing that arbitration proceed as provided for in the agreement. *Id.* § 4.

---

[2] In resolving the instant motion, this Court did not rely on any "new arguments and argumentation" made by Defendants in their reply brief. Accordingly, Plaintiffs' Motion to Strike New Arguments and Argumentation or in the Alternative for Leave To File a Sur-Reply in Opposition to Defendants' Reply Memorandum in Further Support of Defendants' Motion To Compel Arbitration or, in the Alternative, to Dismiss the Complaint in Part Pursuant to Rule 12(B)(6) (Doc. 21) is DENIED AS MOOT.

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine [(1)] whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and [(2)] that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

Here, while the parties disagree on much, two facts are undisputed: (1) the parties' Agreement does not contain an arbitration provision, but (2) as a Player Agent subject to the terms of the NBPA Regulations, Termini (and by extension MTA) agreed to arbitrate certain disputes as outlined in the NBPA Regulations. The issue then is whether Plaintiffs' specific claims against Defendants fall within the substantive scope of claims subject to arbitration under the NBPA Regulations.[3]

Section 5 of the NBPA Regulations provide:

[I]t is the intention of the NBPA that the arbitration process shall be the exclusive method for resolving any and all disputes that may arise from denying certification to an applicant or from the interpretation, application or enforcement of these

---

[3] The parties dispute whether Defendants have authority to compel arbitration pursuant to the NBPA Regulations. The Court need not reach this issue in resolving the present motion.

> Regulations and the resulting [Standard Player Agent Contract ("SPAC")] between Player Agents and individual Players.

(Doc. 13-(NBPA Regulations) § 5.) The NBPA Regulations continue:

> This will ensure that those disputes—which involve essentially internal matters concerning the relationship between individual Players, the NBPA in its capacity as their exclusive bargaining representative, and Player Agents performing certain delegated representative functions relating particularly to individual Player compensation negotiations—will be handled and resolved expeditiously by the decision-maker established herein, without need to resort to costly and time-consuming formal adjudication.

(*Id.*) The NBPA Regulations then explicitly outline "three types of disputes" subject to arbitration:

> (1) "[t]he NBPA denies an Application and the applicant wishes to appeal from that action;"
>
> (2) "[a] dispute arises with respect to the meaning, interpretation, or enforcement of a SPAC . . . entered into between a Player and the Player Agent;" and
>
> (3) "[a] dispute arises between two or more Player Agents with respect to their individual entitlement to fees owed, whether paid or unpaid, by a Player who was jointly represented by such Player Agents. In such cases, at the Player's option, any fees paid or payable by the Player after the dispute arises shall be placed in escrow pending final resolution of such dispute, and paid out of escrow in accordance with the Arbitrator's decision."

(*Id.*)

Defendants ask this Court to read the Section 5 of the NBPA Regulations broadly to cover Plaintiffs' dispute. By its plain language, however, Section 5 is not broad enough to cover Plaintiffs' current claims against Defendants. Section 5 covers three types of disputes—the first two of which are not at issue here. Defendants contend that Plaintiffs' claims fall "well within" the scope of the third type of dispute subject to arbitration under the NBPA Regulations because "[t]he core of Termini's Complaint is his claim that he is entitled to a portion of fees from contracts he negotiated for players that he and Paul jointly represented." (Doc. 13-1, at 12.)

That, however, is not a claim that falls within the substantive scope of claims subject to arbitration under the NBPA Regulations. In Defendants' own words, "this case concerns Paul's and

6

Termini's individual entitlement to fees owed—whether paid or unpaid—resulting from NBA player contracts that Termini negotiated for players he jointly represented with Paul." (Doc. 17, at 7.) Plaintiffs' claims do not raise any issue as to "their individual entitlement to fees owed, whether paid or unpaid, by a Player . . . ." (NBPA Regulations § 5(3).) Rather, Plaintiffs' claims concern their entitlement to fees owed by Defendants under the Agreement for services provided by Plaintiffs to Defendants.[4]

Defendants' citation to other cases involving disputes between player agents only underscores that Plaintiffs' claims here are not subject to arbitration under the specific NBPA Regulations. For example, in *Branion v. Wallace*, the court compelled arbitration in a dispute between two National Football League ("NFL") player agents based on a mandatory arbitration provision contained in the NFL Players Association's Regulations Governing Player Agents ("NFLPA Regulations"). 2017 WL 11633674, at *3–4 (C.D. Cal. Jan 18, 2017). The NFLPA Regulation—unlike the NBPA Regulations—state that the NFLPA Regulations' "arbitration procedure shall be the exclusive method for resolving any and all disputes that may arise from . . . [a]ny other activities of a Contract Advisor within the scope of these Regulations." *Id.* at *5 (citing NFLPA Regulations). The Court noted that "not all disputes between two agents would qualify as activities within the scope of the [NFLPA] Regulations[,]" such as "other disputes between agents, even if they involve the representation of players . . . if they do not implicate the relationship between the agent and the player." Because the

---

[4] To be sure, under the Agreement, earned Agent Services Fees became payable "by" Defendants to Plaintiffs upon the signing of a contract by a player—not upon payment by a player. Further the Agent Services Fees were computed as a percentage of the fee a player paid to Defendants. The Agreement makes no reference to any payment by players to Plaintiffs. (Doc. 1-1; Doc. 1-2.)

7

court found that the NFL player agents' dispute before it did concern the activities of a player agent within the scope of the NFLPA Regulations, the court compelled arbitration. *Id.* at *5–7.

Likewise, in *Dye v. Sexton*, a dispute arose between two NFL player agents after one of the player agents left their partnership to join another agency, allegedly taking some of the partnership's clients with him. 2017 WL 7615571, at *1 (N.D. Ga. Dec. 13, 2017). The court granted the defendant's motion to compel arbitration because the NFLPA Regulations mandated arbitration over certain disputes, including any "interfer[ence] with the contractual relationship of a Contract Advisor and player" and any dispute about "their individual entitlement to fees owed, whether paid or unpaid, by a player-client who was jointly represented" by player agents. *Id.* at *3 (citing the NFLPA Regulations). The court found that the plaintiffs' allegations "include[d], at the very least, claims by [p]laintiffs that [d]efendant interfered with their client relationships as well as what fees [d]efendant may owe [p]laintiffs." *Id.*

Despite Defendants' contention that *Dye* is "directly on point" (Doc. 17, at 13), there are two key differences. First, the NBPA Regulations do not cover disputes over "interfer[ence] with the contractual relationship of a Contract Advisor and player," which was at the heart of the dispute in *Dye*.[5] Second, while the NFLPA Regulations and NBPA Regulations contain similar language covering disputes about "their individual entitlement to fees owed, whether paid or unpaid, by player-clients," the player agents in *Dye* were partners whose dispute concerned the plaintiffs' right to a

---

[5] The NBPA Regulations chose to limit arbitration to three explicitly listed types of disputes even after "comparing the regulatory systems that its sister professional sports unions (MLBPA, NFLPA, and NHLPA) had adopted[.]" (Doc. 13-3, at 11.) This Court has no authority to twist and expand the plain language of the NBPA Regulations to fit Defendants' desired interpretation.

portion of the fees paid by player clients. As mentioned above, that is not the situation here, where Plaintiffs seek their right to payment from Defendants for services rendered to Defendants.

For all the foregoing reasons, Defendants' Motion to Compel Arbitration is DENIED.

### B. Defendants' Rule 12(b)(6) Motion to Dismiss Part of Plaintiffs' Complaint

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. In considering a motion to dismiss brought pursuant to Rule 12(b)(6), the court "assume[s] the factual allegations in the complaint are true and construe[s] the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 2009 WL 1884445, at *1 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008)). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept 'the bare assertion of legal conclusions' as enough, nor does it 'accept as true . . . unwarranted factual inferences.'" *Gritton v. Disponett*, 2009 WL 1505256, at *3 (6th Cir. May 27, 2009) (quoting *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997)). As outlined by the Sixth Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Thus, *Twombly* and *Iqbal* require that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face based on factual content that allows the court to draw the reasonable inference that the

9

defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Here, Defendants contend that (1) Plaintiffs' breach of contract claim must be dismissed to the extent it is based only "upon information and belief" and (2) Plaintiffs' entire Count Two should be dismissed because Ohio law[6] does not recognize an "accounting" cause of action. The Court will address each in turn.

### 1. Count One – Breach of Contract

To establish a claim for breach of contract under Ohio law, "a plaintiff must prove: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach." *In re Fifth Third Early Access Cash Advance Litig. v. Fifth Third Bank*, 925 F.3d 265, 276 (6th Cir. 2019) (citing *Claris, Ltd. V. Hotel Dev. Servs., LLC*, 104 N.E.3d 1076, 1082 (Ohio 2018)). Plaintiffs' Count One alleges that Defendants breached the Agreement in more than one way. Presently, Defendants move to dismiss the claim only to the extent it is based on Plaintiffs' allegations that Defendants concealed player contracts negotiated during the term of the Agreement to avoid paying Plaintiffs. Defendants contend that Plaintiffs' allegations concerning this

---

[6] This matter is before the Court pursuant to diversity jurisdiction "A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state." *Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir. 1996) (citing *Klaxon v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941)). Applying Ohio's choice of law rules, this Court finds that Ohio law governs the parties' dispute. *Id.* ("Ohio's choice of law rules require a court to apply the law of the state with the most significant relationship to the contract when the parties have not specified which state's substantive law should govern the contract."). Neither party disputes that Ohio law governs here. (*E.g.*, Doc. 13-1, at 16 (applying Ohio law to Plaintiffs' Complaint); Doc. 16, at 24 (applying Ohio law).)

issue are insufficient to state a claim because the allegations are based only "[u]pon information and belief."

Allegations asserted upon information and belief are not *per se* insufficient to withstand a Rule 12(b)(6) motion and the Court must consider the Complaint's factual allegations as a whole. *Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 837 n.10 (N.D. Ohio 2021) (citing among authority *Stephens v. Premiere Credit of N. Am., LLC*, 2018 WL 505593, at *2 (W.D. Ky. Jan. 22, 2018) ("A claim is implausible when the complaint simply recites the claim's elements or when the only factual allegations supporting it are asserted 'upon information and belief.'" (citing *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013)))). A plaintiff may plead facts based upon "information and belief" when the "the facts are peculiarly within the possession and control of the defendant, or . . . the belief is based on factual information that makes the inference of culpability plausible." *Cassidy v. Teaching Co., LLC*, 2014 WL 1599518, at *3 (S.D. Ohio Apr. 21, 2014) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). "Allegations made on 'information and belief' are therefore appropriate where a complaint contains supporting factual allegations." *Id*; *see also Gold Crest, LLC*, 525 F. Supp. 3d at 837 n.10 ("Factual allegations based upon information and belief may be sufficient to support a plausible claim for purposes of Rule 12(b)(6) analysis where the factual allegations in the entire pleading allow the Court to draw the reasonable inference that defendant is liable for the conduct alleged.").

Having considered the allegations in Plaintiffs' Complaint,[7] there are sufficient supporting factual allegations (uncontested on Defendants' motion) that make it plausible to infer that

---

[7] The Court did not consider Plaintiffs' impermissible attempt to amend the Complaint through their opposition brief (Doc. 16, at 11 n.4) because a court considering a motion to dismiss "must focus

Defendants concealed player contracts negotiations to avoid paying Plaintiffs under the Agreement. First, Plaintiffs allege that on October 17, 2020, Paul advised Plaintiffs that Paul would be "the only one speaking to teams on behalf of all KSG clients" and that Paul would be "taking the 'lead' on the contract negotiations for the upcoming 2020 NBA draft and free agency signing period[.]" (Doc. 1 ¶ 67.) According to Plaintiffs, Defendants then recruited new agents—in violation of the Agreement's exclusivity terms—to engage in player contract negotiations over that period. Plaintiffs' Complaint also references at least two player contracts that Plaintiffs allege Defendants purposely delayed executing in November 2020 to avoid paying Plaintiffs any Agent Services Fees under the Agreement.

Given Plaintiffs' allegations, the Courts finds that it is plausible that Defendants, by taking over player contract negotiations, concealed some of the same. It follows that Plaintiffs would lack personal knowledge of any specific concealed negotiations because of Defendants actions; making Plaintiffs' allegations based on information and belief permissible. *See Lee v. Dana Inc.*, 2024 WL 4349402, at *7 (N.D. Ohio Sept. 30, 2024) ("Pleading based on information and belief is permissible in the Sixth Circuit under some circumstances. Where a plaintiff lacks personal knowledge of a fact but has sufficient data to justify interposing an allegation on a subject, or where a plaintiff must rely

---

only on the allegations in the pleadings." *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (quoting *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020)). "This does not include plaintiffs' responses to a motion to dismiss." *Id.* (citing *Bates*, 958 F.3d at 483) "'If plaintiffs believe they need to supplement their complaint with additional facts to withstand [a motion to dismiss] . . . they have a readily available tool: a motion to amend the complaint under Rule 15.'" *Id.* (quoting *Bates*, 958 F.3d at 483). A plaintiff cannot "amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Bates*, 958 F.3d at 483.

12

on information furnished by others, information-and-belief pleading is permissible." (internal quotation marks and citations omitted)).

For all the foregoing reasons, Defendants' Motion to Dismiss the Complaint in Part Pursuant to Rule 12(b)(6) is DENIED to the extent it moves to dismiss part of Plaintiffs' Count One.

### 2. Count Two – Accounting

Plaintiffs' Count Two alleges a claim for "accounting." Under Ohio law, however, "a demand for an accounting does not form the basis for a standalone action but is instead, a remedy." *Moore Family Tr. v. Jeffers*, 225 N.E.3d 549, 559 (Ohio Ct. App. Sept. 28, 2023) (citing *Meehan v. Mardis*, 146 N.E.3d 1266, 1270 (Ohio Ct. App. Oct. 4, 2019) ("Accounting and punitive damages are remedies, and not causes of action.")). None of the three cases Plaintiffs cite holds otherwise. (Doc. 16, at 24.) *See Schafer v. RMS Realty*, 138 Ohio App. 3d 244, 298–99 (Ohio Ct. App. 2000) (discussing accounting as remedy for breach of fiduciary duty claim); *Dunn v. Zimmerman*, 69 Ohio St. 3d 304, 307 (1994) (concluding that "the usual and normal remedy for a breach of fiduciary duty or other legal conflict among partners is an accounting"); *Cunningham Prop. Mgmt. Tr. v. Ascent Resources-Utica, LLC*, 351 F. Supp. 3d 1056, 1064 (S.D. Ohio 2018) (denying motion to dismiss "request for accounting" where the court found it was "unclear whether [plaintiff] can prove his breach of contract claim, and if he can, whether he has an adequate remedy at law"). Accordingly, to the extent Plaintiffs' Count Two alleges a standalone claim of "accounting" it must be dismissed as a matter of law.

But even if Plaintiffs' Count Two is meant to be a request for an accounting to remedy the alleged breach of contract, it fails. Accounting is only available as an equitable remedy in the absence of an adequate remedy at law. *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972). "Due to the

historical nature of the relief of accounting, the usage of accounting has changed with the advent of the Federal Rules of Civil Procedure [because] 'the liberal discovery procedures of the Federal Rules operate to make the legal remedies more "adequate" than before.'" *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, 2007 WL 1144866, at *4 (S.D. Ohio Apr. 16, 2007) (quoting *Bradshaw*, 454 F.2d at 79). "Equitable accounting actions are rare since the advent of the Federal Rules of Civil Procedure because the liberal standards of the Rules generally afford plaintiffs the opportunity to obtain discovery relevant to their asserted claim." *Skurka Aerospace, Inc. v. Eaton Aerospace, LLC*, 2011 WL 1134591, at *4 (N.D. Ohio March 25, 2011) (quoting *Boland v. First Winthrop Corp.*, 2010 WL 3037076 (S.D. Ohio Aug. 2, 2010)) (collecting cases); *see also Digital 2000, Inc. v. Bear Communs., Inc.*, 130 F. App'x 12, 22–23 (6th Cir. 2005) ("In light of the broad discovery available to litigants, accounting actions are of dubious utility."). Here, Plaintiffs have not alleged the absence of an adequate remedy at law for the breach of contract claim and, consequently, they cannot maintain any request for an accounting.

For all the foregoing reasons, Plaintiffs' Count Two is dismissed as a matter of law. Accordingly, Defendants' Motion to Dismiss the Complaint in Part Pursuant to Rule 12(b)(6) is GRANTED to the extent it moves to dismiss Count Two in its entirety.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion To Compel Arbitration or, in the Alternative, Dismiss the Complaint in Part Pursuant to Rule 12(b)(6) is GRANTED IN PART and DENIED IN PART. Defendants' motion is GRANTED to the extent it seeks to dismiss Count Two of Plaintiffs' Complaint in its entirety. Defendants' Motion is DENIED to the extent it seeks to

compel arbitration and to dismiss part of Count One of Plaintiffs' Complaint. This action will proceed on Plaintiffs' breach of contract claim before this Court.

    IT IS SO ORDERED.

                                              /s/ Patricia A. Gaughan
                                              PATRICIA A. GAUGHAN

Dated:  11/5/24                            United States District Judge